# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
### IN ADMIRALTY

**Case No.: 21-1562**

GREAT LAKES INSURANCE SE.,

Appellee/Plaintiff,

v.

RAIDERS RETREAT REALTY, LLC,

Appellant/Defendant.

On appeal from the United States District Court,
Eastern District of Pennsylvania

District Court Case No.: 2:19-cv-04466-ER

## **GREAT LAKES INSURANCE SE'S APPELLEE BRIEF**

Counsel for Appellee:

MICHAEL I. GOLDMAN, ESQ.
Goldman & Hellman
233 Harvard Street
Suite 211
Brookline, MA 02446
Cel (617)671-8675
Fax (617)566-4292
Em michael@goldmanandhellman.com
MA Bar No. 677362

GEORGE R. ZACHARKOW, ESQ.
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street
Suite 3400
Philadelphia, PA 19103
Tel (215) 587-9400
Fax (215) 587-9456
Em Zacharkow@DMVLawFirm.com
PA Bar No. 32816

## Great Lakes Insurance SE v. Raiders Retreat Realty, LLC
## DOCKET NO. 21-1562
## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellee Great Lakes Insurance SE respectfully requests that this Court grant oral argument to afford the parties the opportunity to respond to any inquiries from the Court regarding the pertinent facts and/or the application of the relevant legal authorities.

## Great Lakes Insurance SE v. Raiders Retreat Realty, LLC
## DOCKET NO. 21-1562
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1.1 of the United States Court of Appeals for the Third Circuit, Appellee Great Lakes Insurance SE makes the following statement as to corporate ownership:

- Great Lakes Insurance SE is a corporation organized and existing under the laws of the Federal Republic of Germany, with its office and principal place of business located in the Federal Republic of Germany (commercial register number: HRB 230378).

- Great Lakes Insurance SE is a wholly owned subsidiary of Munchener Ruckversicherungs-Gesellschaft (stock ticker symbol MUV2:GR Xetra), a company incorporated in Germany with its principal place of business in Munich, Germany.

Dated:  January 12, 2022

MICHAEL I. GOLDMAN, ESQ.
Goldman & Hellman
233 Harvard Street
Suite 211
Brookline, MA 02446
Cel (617)671-8675
Fax (617)566-4292
Em michael@goldmanandhellman.com

By:  /s/ Michael I. Goldman
MICHAEL I. GOLDMAN
MA Bar No. 677362

GEORGE R. ZACHARKOW, ESQ.
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street
Suite 3400
Philadelphia, PA 19103
Tel (215) 587-9400
Fax (215) 587-9456
Em gzacharkow@DMVLawFirm.com

By:  /s/ George R. Zacharkow
GEORGE R. ZACHARKOW
PA Bar No. 32816

**Great Lakes Insurance SE v. Raiders Retreat Realty, LLC**
**DOCKET NO. 21-1562**
**CERTIFICATE OF IDENTICALITY AND VIRUS SCAN**

In accordance with L.A.R. 31.1(c), the undersigned counsel for Appellee GREAT LAKES INSURANCE SE hereby certifies that the text of the Appellee's electronically filed brief is identical to the text in the paper copies of the Appellee's brief.

In accordance with L.A.R. 31.1(c), the undersigned counsel for Appellee GREAT LAKES INSURANCE SE hereby certifies that virus detection programs (McAfee LiveSafe v.16 and McAfee SecurityCenter v.19.12) were used to scan the Appellee's electronically filed brief and that no viruses were detected.

Dated:        January 12, 2022

MICHAEL I. GOLDMAN, ESQ.
Goldman & Hellman
233 Harvard Street
Suite 211
Brookline, MA 02446
Cel (617)671-8675
Fax (617)566-4292
Em michael@goldmanandhellman.com


By:   /s/ Michael I. Goldman
MICHAEL I. GOLDMAN
MA Bar No. 677362

GEORGE R. ZACHARKOW, ESQ.
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street
Suite 3400
Philadelphia, PA 19103
Tel (215) 587-9400
Fax (215) 587-9456
Em gzacharkow@DMVLawFirm.com


By:   /s/ George R. Zacharkow
GEORGE R. ZACHARKOW
PA Bar No. 32816

**Great Lakes Insurance SE v. Raiders Retreat Realty, LLC**
**DOCKET NO. 21-1562**
**TABLE OF CONTENTS**

| Section | Page |
|---|---|
| STATEMENT REGARDING ORAL ARGUMENT - - - - | 2 |
| CORPORATE DISCLOSURE STATEMENT - - - - - | 3 |
| CERTIFICATE OF IDENTICALITY AND VIRUS SCAN - - - | 4 |
| TABLE OF CONTENTS- - - - - - - - - | 5 |
| TABLE OF CITATIONS- - - - - - - - | 6 |
| STATEMENT OF THE ISSUES - - - - - - - | 12 |
| STATEMENT OF THE CASE - - - - - - - - | 13 |
| SUMMARY OF THE ARGUMENT - - - - - - - | 16 |
| ARGUMENT AND CITATIONS TO AUTHORITY - - - - | 16 |
| A. This court may properly exercise jurisdiction over this interlocutory appeal. - - - - - - | 17 |
| B. The enforcement of a choice of law clause under federal admiralty law can never be defeated by contrary state law, no matter how great that state's interest in the application of its own law. - - - - | 19 |
| C. The second part of the choice of law clause applies to bar all state law causes of action except those that exist under New York law. - - - - - | 36 |
| CONCLUSION - - - - - - - - - | 52 |
| CERTIFICATE OF COMPLIANCE - - - - - - - | 53 |
| CERTIFICATE OF SERVICE - - - - - - - | 54 |

**Great Lakes Insurance SE v. Raiders Retreat Realty, LLC**
**DOCKET NO. 21-1562**
**TABLE OF CITATIONS**

**Statutes**                                                                    **Page**

28 U.S.C. § 1292(a)(3)   -    -    -    -    -    -    -    -    7, 17, 18

28 U.S.C. § 1333   -    -    -    -    -    -    -    -    -    -    7

42 Pa.C.S.A. §8371   -    -    -    -    -    -    -    -    -    15

73 P.S. §201-1    -    -    -    -    -    -    -    -    -    15

M.G.L.A c. 176D §3   -    -    -    -    -    -    -    -    -    42

**Federal Rules of Civil Procedure**

Fed.R.Civ.P. 9(h)  -    -    -    -    -    -    -    -    -    15

Fed.R.Civ.P. 12(b)(6)   -    -    -    -    -    -    -    17, 19

Fed.R.Civ.P. 12(c) -    -    -    -    -    -    -    -    16-19

Fed.R.Civ.P. 54   -    -    -    -    -    -    -    -    -    16

**Federal Rules of Appellate Procedure**
Federal Rule of Appellate Procedure 26.1   -    -    -    -    -    3

**Local Rules of the United States Court of Appeals for the Third Circuit**
Local Rule 26.1.1  -    -    -    -    -    -    -    -    -    -    3

Local Rule 31.1(c) -    -    -    -    -    -    -    -    -    -    4

**Cases**
*Acadia Ins. Co. v. McNeil,*
116 F.3d 599, 602; 1997 A.M.C. 2409 (1st Cir.1997)   -    -    -    -    15

*AGF Marine Aviation & Transport v. Cassin*
544 F.3d 255; 2008 A.M.C. 2300 (3d Cir.2008)   - 12, 15, 21-24, 30, 36-40, 51, 52

**Great Lakes Insurance SE v. Raiders Retreat Realty, LLC**
**DOCKET NO. 21-1562**

*Albany Ins. Co. v. Anh Thi Kieu*
927 F.2d 882; 1991 A.M.C. 2211 (5th Cir.1991) -    -    -    -    -    35

*American S.S. Owners' Mut. Protection and*
*Indem. Ass'n, Inc. v. Dann Ocean Towing, Inc.*
2012 WL 1565141 (D.Md.2012)    -    -    -    -    -    47-48

*Arndt v. Twenty-One Eighty-Five, LLC*
448 F.Supp.3d 1310 (S.D.Fla.2020)    -    -    -    -    -    46-50

*Atlantic Specialty Insurance Company v. AC Chicago, LLC*
272 F.Supp.3d 1043, 1049; 2018 A.M.C. 1183 (E.D.Ill.2017)    -    -    -    37

*Bominflot, Inc. v. The M/V HENRICH S*
465 F.3d 144; 2006 A.M.C. 2510 (4th Cir.2006)    -    -    -    45-48

*The Bremen v. Zapata Off-Shore Co.*
407 U.S. 1; 1972 A.M.C. 1407 (1972) -    -    -    -    -    12, 19, 26-31

*Carib Resorts, Inc. v. Watkins Underwriters at*
*Lloyds, Syndicate Number 457*
2018 WL 8048755 (S.D.Fla.2018)    -    -    -    -    -    26, 51

*Catlin Specialty Ins. Co. v. J.J. White, Inc.*
309 F.Supp.3d 345 (E.D.Pa.2018)    -    -    -    -    -    33

*Chan v. Society Expeditions, Inc.*
123 F.3d 1287 (9th Cir.1997)    -    -    -    -    -    -    18

*Chiariello v. ING Groep NV*
2006 AMC 2148 (N.D.Cal.2006)    -    -    -    -    23, 38, 39, 51

*Chiquita Intern. Ltd. v. Liverpool and*
*London S.S. Protection and Indem. Ass'n Ltd.*
124 F.Supp.2d 158; 2001 A.M.C. 839 (S.D.N.Y.2000)    -    -    -    -    37

*Danganan v. Guardian Protections Services*
179 A.3d 9 (Pa.2018)    -    -    -    -    -    -    -    35

*Deep Sea Financing, LLC v. British Marine Luxembourg, S.A.*
2010 WL 3603794 (S.D.Ga.2010)  -  -  -  -  -  -  31, 32

*Fireman's Fund Ins. Co. v. Cox*
742 F.Supp. 609; 1990 A.M.C. 908 (M.D.Fla.1989)  -  -  -  -  37

*Galilea, LLC v. AGCS Marine Insurance Company*
879 F.3d 1052; 2018 A.M.C. 46 (9th Cir.2018)  -  -  -  -  28-30

*Galilea, LLC v. AGCS Marine Insurance Company*
2016 A.M.C. 808 (D.Mont.2016)  -  -  -  -  -  -  28

*Gebhart v. Steffen*
574 Fed. Appx. 156, 158 (3d Cir.2014)  -  -  -  -  -  17

*Great Lakes Insurance SE v. Aarvik*
2019 WL 201258 (S.D.Fla.2019)  -  -  -  -  -  -  26

*Great Lakes Insurance SE v. Andersson*
--- F.Supp.3d ---; 2021 WL 2542489 (D.Mass.2021)  -  13, 25, 42-43, 50-51

*Great Lakes Insurance SE v. Boat Rental Miami, Inc.*
2020 WL 264674 (S.D.Fla.2020)  -  -  -  -  -  43-47, 51

*Great Lakes Insurance, S.E. v. Gray Group Investments, LLC*
2021 WL 6125433 (E.D.La.2021)  -  -  -  -  -  -  25

*Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*
521 F.Supp.3d 580 (E.D.Pa.2021)  -  -  -  -  -  -  42

*Great Lakes Insurance SE v. Sea 21-21*
2021 WL 6135127 (S.D.Fla.2021)  -  -  -  -  -  -  25

*Great Lakes Insurance SE v. Sunset Watersports, Inc.*
2021 WL 5933708 (S.D.Fla.2021)  -  -  -  -  -  -  25

*Great Lakes Reinsurance (UK) PLC v. Dion*
2010 A.M.C. 338 (S.D.Cal.2009)  -  -  -  -  -  -  23, 41-42

*Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*
585 F.3d 236, 242; 2010 A.M.C. 185 (5th Cir.2009)   -   -  21, 23, 29-32, 40

*Great Lakes Reinsurance (UK) PLC v. Kranig*
2013 WL 2631861 (D.V.I.2013)  -   -   -   -   -   -   -  26

*Great Lakes Reinsurance (UK) v. Rosin*
757 F.Supp.2d 1244, 1251, 2011 A.M.C. 223 (S.D.Fla.2010)  -   -  23, 26

*Great Lakes Reinsurance (UK), PLC v. Sea Cat I, LLC*
653 F.Supp.2d 1193, 2010 A.M.C. 703 (W.D.Ok.2009)  -   -   -  23, 26, 41

*Great Lakes Reinsurance (UK) PLC v. S. Marine Concepts, Inc.*
2009 A.M.C. 1093 (S.D.Tex.2008)  -   -   -   -   -   -  23

*Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*
2011 WL 1044154 (S.D.Tex.2011)  -   -   -   -   -  26, 48-50

*Great Lakes Reinsurance (UK) PLC v. Vasquez*
341 Fed.Appx. 515 (11th Cir.2009)  -   -   -   -   -   -  23

*In re McAllister Towing and Transp. Co., Inc.*
432 F.3d 216, 2006 A.M.C. 45 (3d Cir.2005)  -   -   -   -  18

*Joseph v. Great Lakes Reinsurance (UK) PLC*,
2011 WL 1230841 (N.D.Oh.2011)  -   -   -   -   -  23

*Kilmer v. Connecticut Indem. Co.*
189 F.Supp.2d 237 (M.D.Pa.2002)  -   -   -   -  34, 35

*King v. Allstate Ins. Co.*
906 F.2d 1537; 1991 A.M.C. 204 (11th Cir.1990)  -   -   -   -  21

*Littlefield v. Acadia Ins. Co.*
392 F.3d 1; 2005 AMC 1779 (1st Cir.2004)  -   -   -   -  21

*Martino v. New Hampshire Ins. Co.*
1990 WL 67223, p. 1 (E.D.Pa.1990)  -   -   -   -   -  15

*Muth v. Woodring*
755 Fed. Appx. 109, 112 (3d Cir.2018)  -  -  -  -  -  -  17

*North American Specialty Ins. Co. v. Bader*
58 F.Supp.2d 493, 497 (D.N.J.1999)  -  -  -  -  -  -  15

*Nunley v. M/V Dauntless Colocotronis*
696 F.2d 1141 (5th Cir.1983)  -  -  -  -  -  -  -  17

*Openwater Safety IV, LLV v. Great Lakes Insurance SE*
435 F.Supp.3d 1142 (D.Colo.2020)  -  -  -  -  -  -  25-26

*Rental Boat Corp. v. Great Lakes Insurance SE*
2020 WL 7350400 (S.D.Fla.2020)  -  -  -  -  -  -  26

*Royal Ins. Co. v. Orient Overseas Container Line Ltd.*
514 F.3d 621, 634; 2008 A.M.C. 337 (6th Cir.2008)  -  -  -  36

*Sentry Select Ins. Co. v. Royal Ins. Co. of America*
481 F.3d 1208, 1221; 2007 A.M.C. 913 (9th Cir.2007)  -  -  -  37-38

*Sirius Ins. Co. (UK) Ltd. v. Collins*
16 F.3d 34, 36; 1994 A.M.C. 1683 (2d Cir.1994)  -  -  -  -  15

*Smith v. Commonwealth Nat. Bank*
557 A.2d 775 (P.A.Super.1989) -  -  -  -  -  -  33

*Smith v. Lincoln Ben. Life Co.*
2009 WL 789900, p. 7 (W.D.Pa.2009)  -  -  -  -  -  33

*St. Paul Fire & Marine Ins. Co. v.*
*Board of Com'rs of Port of New Orleans*
418 Fed. Appx. 305 (5th Cir.2011)  -  -  -  -  -  -  22

*St. Paul Fire and Marine Ins. Co. v.*
*Board of Com'rs of Port of New Orleans*
646 F.Supp.2d 813 (E.D.La.2009)  -  -  -  -  -  -  22

*Suydam v. Reed Stenhouse of Washington, Inc.*
820 F.2d 1506; 1988 A.M.C. 441 (9th Cir.1987)  -  -  -  -  36

*Texaco Inc. v. Duhe*
274 F.3d 911, 919 (5th Cir.2001)   -   -   -   -   -   -   -   46

*Toy v. Metropolitan Life Ins. Co.*
928 A.2d 186 (Pa.2007)  -   -   -   -   -   -   -   35

*U.S. v. Savani*
733 F.3d 56, 62 (3d Cir.2013)  -   -   -   -   -   -   -   24

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*
348 U.S. 310, 314; 1955 A.M.C. 467 (1955) -   -   -   19-21, 28, 30, 35-36

*Windsor Mount Joy Mut. Ins. Co. v. Johnson*
264 F.Supp.2d 158, 159; 2003 A.M.C. 2174 (D.N.J.2003)   -   -   -   15

*Windward Traders, Ltd. v. Fred S. James & Co. of New York, Inc.*
855 F.2d 814 (11th Cir.1988)  -   -   -   -   -   -   -   35

*XL Specialty Insurance Company v. Prestige Fragrances, Inc.*
420 F.Supp.3d 172; 2019 A.M.C. 2719 (S.D.N.Y.2019)  -   -   -   -   51

**Secondary Sources**
*Black's Law Dictionary* 1425 (6th ed.1990)  -   -   -   -   -   46

*G. Gilmore & C. Black, The Law of Admiralty* (2d ed.1975)   -   -   -   37

*Merriam-Webster's Collegiate Dictionary*   -   -   -   -   45

*Restatement (Second) of Contracts* §212 cmt. b (1981)   -   -   -   38

*Webster's Third International Dictionary* (1998 ed.)   -   -   -   46

**Great Lakes Insurance SE v. Raiders Retreat Realty, LLC**
**DOCKET NO. 21-1562**
**STATEMENT OF THE ISSUES**

1. This Court may exercise jurisdiction over an interlocutory appeal from the District Court's non-final order in an admiralty action (28 U.S.C. §1333) because an order dismissing a cause of action "determine[s] the rights and liabilities of the parties" within the meaning of 28 U.S.C. §1292(a)(3). ECF No. 51 and ECF No. 52.

2. In accordance with fifteen years of directly applicable caselaw, including this Court's binding decision in *AGF Marine v. Cassin*, *infra*, the District Court correctly held that the election in the choice of law clause for New York law as an alternative to federal admiralty law applied to all issues in dispute between the parties, not just the express terms of the disputed policy of marine insurance. ECF No. 51 and ECF No. 52.

3. The district court correctly held that the decision of the Supreme Court of the United States in *Bremen*, *infra*, exclusively addresses the enforceability of forum selection clauses and has nothing whatsoever to do with the enforcement of choice of law clauses. ECF No. 51 and ECF No. 52.

**STATEMENT OF THE CASE**

The present appeal arises out of a policy of marine insurance, Policy No.

CSRYP/171163, issued to Defendant/Appellant Raiders Retreat Realty Co., LLC

(hereinafter "RAIDERS") and affording $550,000.00 in first-party property damage

coverage for the vessel identified on the declarations page. ECF No. 1, p. 67.[1]  On

or about June 7, 2019, during the period of coverage afforded by Policy No.

CSRYP/171163 (hereinafter "the Policy"), the vessel insured thereunder ran

aground. ECF No. 1, p. 5. Following submission of the claim to Plaintiff/Appellee

Great Lakes Insurance SE (hereinafter "GLI"), a full investigation was undertaken

into the causes and circumstances of the loss. Based on the facts established by that

investigation, GLI determined that the Policy afforded no coverage for the loss due

to the breach by RAIDERS of an express warranty pertaining to the certification and

tagging of firefighting equipment aboard the vessel. ECF No. 56. Irrefutable

photographic evidence demonstrates that the certification tags on two of the vessel's

---

[1] The Appellant's brief alleges that Policy CSRYP/171163 was issued to RAIDERS through a Pennsylvania-based agent that was acting as GLI's agent. Appellant's Brief, p. 13. This assertion, that the agent acted as the agent of GLI, is merely counsel's unfounded assertion and has no basis in the factual record or in realty. This assertion is also directly contradicted by the Policy's express terms: "h) If you have used a broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you." ECF No. 56-1, p. 13.

fire extinguishers and on the vessel's Halon 1301 system expired in 2015, four years prior to the alleged grounding and before RAIDERS repeatedly warranted that the fire suppression equipment would be inspected and recertified annually. ECF No. 56-1, pp. 32-40. GLI determined that these expired certification tags constituted a breach of the Policy's express warranty that "all such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary." *Id.* Therefore, Plaintiff Great Lakes Insurance SE filed the present declaratory judgment action for the purpose of obtaining a judgment from the district court affirming that coverage determination. ECF No. 1.

The declaratory judgment action filed by Plaintiff Great Lakes Insurance SE properly invoked the admiralty jurisdiction of the federal court under 28 U.S.C. §1333 and Fed.R.Civ.P. 9(h). ECF No. 1, p. 2. The admiralty jurisdiction of the federal courts extends to policies of marine insurance, like the present one, which cover pleasure craft. *Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 602; 1997 A.M.C. 2409 (1st Cir.1997), *Sirius Ins. Co. (UK) Ltd. v. Collins*, 16 F.3d 34, 36; 1994 A.M.C. 1683 (2d Cir.1994), *Windsor Mount Joy Mut. Ins. Co. v. Johnson*, 264 F.Supp.2d 158, 159; 2003 A.M.C. 2174 (D.N.J.2003), *North American Specialty Ins. Co. v. Bader*, 58 F.Supp.2d 493, 497 (D.N.J.1999), *Martino v. New Hampshire Ins. Co.*, 1990 WL 67223, p. 1 (E.D.Pa.1990).

The Policy contained the following choice of law clause:

It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

ECF No. 56-1, p. 17. This exact choice of law clause has already been held valid and enforceable by this Court. *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255; 2008 A.M.C. 2300. Furthermore, this exact choice of law clause has been enforced and applied to extracontractual claims, such as bad faith and attorney's fees. *See cases analyzed infra*.

In response to GLI's declaratory judgment action, RAIDERS filed a counterclaim that included causes of action arising under Pennsylvania's bad faith statutes, 42 Pa. C.S.A. §8371 and 73 P.S. §201-1 *et seq*. ECF No. 5. In reliance on the Policy's choice of law clause, GLI filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) to have the prohibited Pennsylvania state law claims dismissed. ECF No. 19. Following the submission of no less than thirteen separate memoranda of law debating the validity of GLI's choice of law clause, the district court issued its order dismissing the Pennsylvania state law claims asserted by RAIDERS. ECF No. 51. Following the denial of RAIDERS' Motion to Alter or Amend Judgment under Fed. R. Civ. P. 54, this appeal was filed. ECF No. 55 and ECF No. 59.

**SUMMARY OF THE ARGUMENT**

1. This Court may exercise jurisdiction over an interlocutory appeal from a non-final order of the District Court which dismisses a cause of action based on the enforcement of a choice of law clause.

2. No matter how compelling and no matter how forcefully stated, state law can never defeat the enforcement of a marine insurance policy's choice of law clause under federal admiralty law.

3. The present choice of law clause applies to all issues in dispute between the parties, including bad faith claims, fiduciary claims, and consumer claims arising under the law of a state other than the law elected by the choice of law clause.

**ARGUMENT AND CITATION TO AUTHORITY**

**A.** **This Court may properly exercise jurisdiction over this interlocutory appeal.**

The Courts of Appeal have jurisdiction to hear appeals in admiralty matters from decisions of the district courts "determining the rights and liabilities of the parties." 28 U.S.C. §1292(a)(3). This includes decisions of the district courts

granting motions to dismiss for judgment on the pleadings and for failure to state a claim upon which relief can be granted.[2]

For instance, in 1983, the Fifth Circuit Court of Appeals considered this question in an admiralty case arising out of a cargo vessel which struck a sunken barge. *Nunley v. M/V Dauntless Colocotronis*, 696 F.2d 1141 (5th Cir.1983). Following the assertion of tort claims by the owner of the cargo vessel, the barge owner and the United States both moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). *Id*, at 1142. The district court granted the motion for judgment on the pleadings and the plaintiff appealed under 28 U.S.C. §1292(a)(3). *Id*. Exercising jurisdiction over the interlocutory appeal, the Fifth Circuit considered the appeal and reversed the judgment of the district court. *Id*.

Similarly, in 1997, the Ninth Circuit Court of Appeals considered an interlocutory appeal in *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287 (9th Cir.1997). *Chan* arose out of an accident in which cruise ship passengers were thrown from their ferry and drowned. *Id*, at 1289. Although the cruise ship was Liberian flagged, the passenger ticket contained a choice of law clause calling for the application of federal admiralty law. *Id*. Based on the choice of law clause, the

---

[2] Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(c) are judged by the same standard. Both accept all well pleaded facts as true, and both test the legal sufficiency of the pleadings. *Muth v. Woodring*, 755 Fed. Appx. 109, 112 (3d Cir.2018), *Gebhart v. Steffen*, 574 Fed. Appx. 156, 158 (3d Cir.2014).

claimants filed various actions, including an *in rem* action based on federal admiralty law. *Id*, at 1290. However, the vessel and its owners moved to dismiss based on Liberian law. *Id*. After the district court granted the motion to dismiss, the claimants filed an immediate interlocutory appeal under 28 U.S.C. §1292(a)(3). *Id* (fn. 3). The Ninth Circuit Court of Appeals heard the appeal and reversed the district court's dismissal of the *in rem* claims arising under federal admiralty law. *Id*.

In 2005, this Court considered an interlocutory appeal arising out of a tort suit against the owner of a tug and involving an injured seaman. *In re McAllister Towing and Transp. Co., Inc.*, 432 F.3d 216, 2006 A.M.C. 45 (3d Cir.2005). Once the injured seaman brought suit, the defendant brought third-party claims against several other parties, including the United States. *Id*, at 218. The United States moved for judgment on the pleadings under Fed.R.Civ.P. 12(c) based on the provisions of the Federal Employees' Compensation Act, which immunized the United States from certain tort claims by its employees. *Id*, 218-19. The district court granted the 12(c) motion and the third-party plaintiff filed an immediate interlocutory appeal under 28 U.S.C. §1292(a)(3). *Id*, at 219. The Third Circuit considered the appeal and affirmed the district court's decision dismissing the claims against the United States. *Id*, at 226.

These cases establish that a decision of a district court granting a motion under either Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c) "determin[es] the rights and

liabilities of the parties" within the meaning of 28 U.S.C. §1292(a)(3). Therefore, this Court may properly exercise jurisdiction and this interlocutory appeal may proceed.

    **B.**  **The enforcement of a choice of law clause under federal admiralty law can never be defeated by contrary state law, no matter how great that state's interest in the application of its own law.**

The dispositive issue raised in this appeal is resolved by a single statement from the Supreme Court's decision in the *Wilburn Boat* case: the federal courts have "fashioned a large part of the existing rules that govern admiralty. And States can no more override such judicial rules validly fashioned than they can override Acts of Congress." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314; 1955 A.M.C. 467 (1955). It makes no difference whatsoever that Pennsylvania law may differ from federal admiralty law. *Id*. It makes no difference whatsoever that Pennsylvania may have a strong public policy in favor of giving its citizens greater rights than those which are allowed under the parties' choice of law clause. *Id*. The Appellant's argument that this Court should misapply the analysis from the *Bremen* case, *infra*, or that this Court should allow Pennsylvania law to defeat federal admiralty choice of law rules, is directly contrary to the Supreme Court's binding *Wilburn Boat* decision. *Id*.

Every issue in marine insurance begins with the Supreme Court's decision in *Wilburn Boat*. *Id*. *Wilburn Boat* arose out of a policy of marine insurance issued in

Texas.  *Id*, at 311.  When the insured houseboat was destroyed by a fire, the marine

insurer denied the claim based on the insured's breach of a warranty.  *Id*.  The marine

insurer relied on what it believed to be the established rule of federal admiralty, that

all warranties in marine insurance policies must be strictly, literally complied with.

*Id*.  However, the Supreme Court held that federal admiralty law did not necessarily

govern all provisions in a policy of marine insurance.  *Id*.  Rather, in order to

determine what law governed, federal admiralty law or Texas law, the Supreme

Court held that a court must follow this three-step analysis:

(1) First, the court must determine whether there is an entrenched rule
of federal admiralty law.  If the answer to this question is "yes," then
the court must apply federal admiralty law.  *Id*, at 314.

(2) Second, if the answer is "no," then the court must consider whether
to fashion a new rule of federal admiralty law.  *Id*.

(3) Third, if the court declines to fashion a new rule of federal admiralty
law, then the court shall proceed to apply state law.  *Id*, at 315.

Applying this three-part analysis to a policy of marine insurance issued to an

insured in Texas, the Supreme Court held that there was no rule of federal admiralty

law pertaining to the specific warranty at issue.  *Id*, at 314.  Therefore, since the

Supreme Court declined to create a new rule, the Supreme Court held that the

enforceability of the warranty was governed by Texas law.  *Id*, at 315.

Applying the *Wilburn Boat* analysis to the present case, this Court must first

answer this question: Is there a validly fashioned rule of federal admiralty law

pertaining to the enforcement of choice of law clauses in policies of marine insurance? *Id*, at 314. If the answer is yes, then the analysis ceases and this Court must apply that federal rule, no matter what. *Id*. Pennsylvania can no more override such judicial rules validly fashioned than it can override Acts of Congress. *Id*.

A five-minute search of Westlaw proves, beyond doubt, that this Court, as well as the other Courts of Appeals, have recognized that there is a validly fashioned rule of federal admiralty law which holds that choice of law clauses in policies of marine insurance are presumptively valid and enforceable. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242; 2010 A.M.C. 185 (5th Cir.2009), *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255; 2008 AMC 2300, *Littlefield v. Acadia Ins. Co.*, 392 F.3d 1; 2005 AMC 1779 (1st Cir.2004), *King v. Allstate Ins. Co.*, 906 F.2d 1537; 1991 A.M.C. 204 (11th Cir.1990).

For instance, the case of *St. Paul Fire & Marine Ins. Co. v. Board of Com'rs of Port of New Orleans* arose out of an excess marine insurance policy covering the Port of New Orleans. 418 Fed. Appx. 305 (5th Cir.2011). Exactly like the present Policy, the excess insurance policy in *Port of New Orleans* contained a choice of law clause calling for the application of New York law.[3] *Id*, at 307. On summary

---

[3] The choice of law clauses stated that the policy of insurance "shall be governed by the internal laws of the State of New York in all respects, including matters of

judgment, the district court gave judgment to the insurer because, under New York law, breach of a notice provision is a total defense to coverage. *Id*. On appeal, the Port of New Orleans argued that the district court should have applied Louisiana law and therefore should have ruled that the notice provision was unenforceable without a showing of prejudice. *Id*, at 09. After confirming that the policy of excess insurance was a maritime contract, the Fifth Circuit held that, under federal admiralty law, the policy's choice of law clause calling for the application of New York law had to be enforced. *Id*, 309. Therefore, the insured's breach of the notice provision barred coverage, notwithstanding Louisiana law to the contrary. *Id*.

The present policy of marine insurance contains a choice of law clause which states, "It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York." ECF No. 1-2, p. 18. This exact choice of law clause has been found valid and enforceable by multiple federal appellate and district courts throughout the United States. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*, *supra*, *Great Lakes Reinsurance (UK) PLC v. Vasquez*, 341

---

interpretation and performance…" *St. Paul Fire and Marine Ins. Co. v. Board of Com'rs of Port of New Orleans*, 646 F.Supp.2d 813 (E.D.La.2009).

Fed.Appx. 515 (11th Cir.2009), *AGF Marine Aviation & Transport v. Cassin*, *supra*, *Joseph v. Great Lakes Reinsurance (UK) PLC*, 2011 WL 1230841 (N.D.Oh.2011), *Great Lakes Reinsurance (UK) v. Rosin*, 757 F.Supp.2d 1244, 1251, 2011 A.M.C. 223 (S.D.Fla.2010), *Great Lakes Reinsurance (UK), PLC v. Sea Cat I, LLC*, 653 F.Supp.2d 1193, 2010 A.M.C. 703 (W.D.Ok.2009), *Great Lakes Reinsurance (UK) PLC v. Dion*, 2010 A.M.C. 338 (S.D.Cal.2009), *Great Lakes Reinsurance (UK) PLC v. S. Marine Concepts, Inc.*, 2009 A.M.C. 1093 (S.D.Tex.2008), *Chiariello v. ING Groep NV*, 2006 AMC 2148 (N.D.Cal.2006). Therefore, as discussed in more depth below, any cause of action arising under Pennsylvania law fails as a matter of law and must be dismissed.

This Court's binding decision in *AGF Marine Aviation & Transport v. Cassin* perfectly illustrates the proper application of this precise choice of law clause. 544 F.3d 255; 2008 AMC 2300.[4] The *AGF Marine* case arose out of an identical policy of marine insurance on a pleasure vessel. *Id*, at 257-58. Following a loss, the marine insurer denied coverage for the loss based on the insured's breach of the federal admiralty law doctrine of *uberrimae fidei* ("utmost good faith"), which requires that the insured voluntarily disclose to the insurer all facts material to the insurer's decision to accept the risk. *Id*, at 262. This identical policy of marine insurance

---

[4] A three-judge panel is generally bound by the prior decision of the Court, barring some intervening change in the law. *U.S. v. Savani*, 733 F.3d 56, 62 (3d Cir.2013).

included an identical choice of law clause, "It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York." *Id*, at 262.[5] Applying this choice of law clause, this Court held that *uberrimae fidei* is an entrenched rule of federal admiralty law and that the insured's failure to truthfully disclose all material facts rendered the policy of marine insurance void *ab initio* ("from inception"). *Id*, at 262-65.

Federal courts throughout this country have repeatedly applied this choice of law clause to block the application of any law except federal admiralty law or New York law:

- Fifteen days ago, in the case of *Great Lakes Insurance, S.E. v. Gray Group Investments, LLC*, the Eastern District of Louisiana held that a hurricane plan warranty was valid and enforceable under New York law and that, under an identical choice of law clause, the insured's breach of the warranty rendered an identical policy of marine insurance void from inception. 2021 WL 6125433 (E.D.La.2021).

- Two months and five days ago, in the case of *Great Lakes Insurance SE v. Sunset Watersports, Inc.*, the Southern District of Florida held that a navigational limits warranty was valid and enforceable under both federal

[5] The policy and the choice of law clause were identical because the marine insurer was represented by the exact same managing general agent as GLI in the present case, Concept Special Risks, Ltd. At that time, Concept Special Risks, Ltd. was known as "TL Dallas Special Risks, Ltd." Although the name has changed, it is exactly the same entity as the managing general agent in the present case.

admiralty law and New York law and that, under an identical choice of law clause, the insured's breach of the navigational limits warranty rendered an identical policy of marine insurance void from inception. 2021 WL 5933708 (S.D.Fla.2021).

- Three months ago, in the case of *Great Lakes Insurance SE v. Sea 21-21*, the Southern District of Florida held that an identical policy of marine insurance containing an identical choice of law clause was void from inception under the federal admiralty law doctrine of *uberrimae fidei* ("utmost good faith") due to the insured's misrepresentation of material facts on the application for insurance. 2021 WL 6135127 (S.D.Fla.2021).

- Six-and-a-half months ago, in the case of *Great Lakes Insurance SE v. Andersson*, the District of Massachusetts held that an identical choice of law clause in an identical policy of marine insurance barred the insured from asserting claims arising under the Massachusetts bad faith statute. --- F.Supp.3d ---; 2021 WL 2542489.

- Two years ago, in the case of *Openwater Safety IV, LLV v. Great Lakes Insurance SE*, the District of Colorado held that a named operator warranty was valid and enforceable under both federal admiralty law and New York law and that, under an identical choice of law clause, the insured's breach of the named operator warranty rendered an identical policy of marine insurance void from inception. 435 F.Supp.3d 1142 (D.Colo.2020).

Numerous other federal courts have applied the same choice of law clause and reached the same decision. *Rental Boat Corp. v. Great Lakes Insurance SE*, 2020 WL 7350400 (S.D.Fla.2020), *Great Lakes Insurance SE v. Aarvik*, 2019 WL 201258 (S.D.Fla.2019), *Carib Resorts, Inc. v. Watkins Underwriters at Lloyds, Syndicate Number 457*, 2018 WL 8048755 (S.D.Fla.2018), *Great Lakes Reinsurance (UK) PLC v. Kranig*, 2013 WL 2631861 (D.V.I.2013), *Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*, 2011 WL 1044154 (S.D.Tex.2011), *Great Lakes*

*Reinsurance (UK), PLC v. Rosin*, *supra*, *Great Lakes Reinsurance (UK) PLC v.*

*Dion*, *supra*, *Great Lakes Reinsurance (UK), PLC v. Sea Cat I, LLC*, *supra*.

In the face of this overwhelming weight of binding caselaw, the Appellant's

counterargument is that this Court should instead misapply the Supreme Court's

irrelevant decision in the *Bremen* case.  ECF No. 26, p. 41.  *Bremen* is utterly

irrelevant because it had absolutely nothing to do with the enforcement of choice of

law clauses.  *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1; 1972 A.M.C. 1407

(1972).  The Supreme Court's decision expressly recognized that the maritime

contract at issue contained no choice of law clause.  *Id*, at 13 (n. 15).  *Bremen* dealt

exclusively with forum selection clauses.  *Id*.  Chief Justice Burger could not have

made this point more clearly when he wrote, "We granted certiorari to review a

judgment of the United States Court of Appeals for the Fifth Circuit declining to

enforce a ***FORUM-SELECTION CLAUSE***[.]"  *Id*, at 2 [emphasis added].

*Bremen* arose out of a contract between an American corporation and a

German corporation to tow a drilling rig from Louisiana to Italy.  *Id*, at 3.  The

contract contained this forum selection clause: "Any dispute arising must be treated

before the London Court of Justice."  *Id*.  Following an incident at sea in which the

rig was damaged, the American corporation ignored the forum selection clause and

brought suit in the federal court in Tampa.  *Id*, at 4.  Although the lower courts

declined to enforce the clause, the Supreme Court held that forum selection clauses

are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. *Id*, at 10.

There is only a single mention in *Bremen* of a possible choice of law issue. *Id*, at 17. *Bremen* states that, in rare circumstances, a forum selection clause might not be enforced where selection of a remote forum, applying different law, might contravene an important public policy of the American forum. *Id*. This is utterly irrelevant in the present matter because the Eastern District of Pennsylvania is not a remote forum in which to litigate the claims of a Pennsylvania party. Nor is there any chance that this Court will apply some alien body of law. Under United States federal admiralty law, this Court must apply federal choice of law rules to a choice of law clause in a marine insurance policy sold to an American citizen in the United States, which calls for the application of United States federal admiralty law or, absent such, New York law. *Wilburn Boat*, *supra*.

Almost exactly four years ago, the irrelevance of *Bremen* was directly addressed by the Ninth Circuit Court of Appeals in *Galilea, LLC v. AGCS Marine Insurance Company*, 879 F.3d 1052; 2018 A.M.C. 46 (9th Cir.2018). The *Galilea* case concerned a policy of marine insurance issued to an insured in Montana. *Id*, at 1054. The policy of marine insurance included a choice of law clause almost identical to GLI's in the present matter. *Id*. Following the sinking of the yacht and the denial of coverage, the insured brought suit in the U.S. District Court for the

District of Montana, asserting multiple causes of action arising under Montana law.

*Galilea, LLC v. AGCS Marine Insurance Company*, 2016 A.M.C. 808 (D.Mont.2016). In response, the marine insurer filed a motion to compel enforcement with the policy's arbitration clause and to enforce the policy's choice of law clause. *Id*. First, the district court correctly recognized that "***a federal court sitting in diversity applies the choice-of-law rules of the forum state, whereas a federal court sitting in admiralty must apply federal maritime choice-of-law rules***." *Id*. at 2 [emphasis added]. Next, the district court held that "When a contract specifies which law applies, admiralty courts will generally give effect to that choice." *Id*. at 3. This had to be so because, "[u]nder federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Id*, quoting, *Great Lakes v. Durham Auctions*, 585 F.3d at 242. Therefore, the district court applied the choice of law clause and found that the policy's arbitration clause was enforceable under federal admiralty law. *Id*.

On appeal, the insured made the exact same mistake as RAIDERS, arguing that, under the Supreme Court's decision in *Bremen*, the marine insurance policy's choice of law clause could be defeated by the "strong public policy" of Montana. *Galilea v. AGCS*, 879 F.3d 1052, 1059. The Ninth Circuit completely rejected this ill found contention:

> There are two critical problems with Galilea's reliance on *The Bremen*. First, that case did not discuss federal maritime law rules about *choice-*

*of-law clauses*, but rather about forum selection clauses. By contrast, Galilea and the Underwriters agreed to a kind of forum selection provision—arbitration—and also to a separate choice-of-law provision—federal maritime law, and where that law has gaps, New York law. And as we have already established, here there is no gap in federal maritime law to fill with law from any state, Montana included, as the FAA supplies the governing arbitration law for maritime transactions.

Second, and more foundationally, *The Bremen* considered whether the public policy of the forum where suit was brought—there, federal public policy as supplied by federal maritime law—outweighed the application of the law of other countries. In other words, under the rule of *The Bremen* and its progeny, courts consider the application of the laws of otherwise equally situated fora in light of the concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability. But here we encounter an unequal, hierarchical relationship between federal maritime law and state law; again, state law governs disputes arising under marine insurance contracts only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice.

*Id*, at 1060 (internal quotations and citations omitted).

Therefore, the Ninth Circuit concluded that "Within federal admiralty jurisdiction, conflicting state policy cannot override squarely applicable federal maritime law." *Id*.

Under *Wilburn Boat*, as well as this Court's binding decision in *AGF Marine*, the choice of law analysis is complete because the caselaw cited above conclusively demonstrates that there is a rule of federal admiralty law that choice of law clauses in policies of marine insurance are presumptively valid and enforceable. Therefore,

there is no need to proceed any further and this Court should affirm the District Court's order enforcing GLI's choice of law clause.

Next, even if the *Bremen* analysis were to be misapplied to the present choice of law clause, this Court would still have to reject the challenge to GLI's choice of law clause because Pennsylvania's bad faith statute is not a sufficiently "strong public policy" to defeat the enforcement of GLI's choice of law clause under federal admiralty law.

Some courts, such as the Fifth Circuit in *Durham Auctions*, have made this mistake and have considered the public policy of the state law forbidden by the choice of law clause. *Great Lakes v. Durham Auctions*, 585 F.3d 236. Nonetheless, even misapplying the *Bremen* analysis, the Fifth Circuit found that a state's bad faith law was not a sufficiently "strong public interest" to defeat GLI's choice of law clause. *Id*. The *Durham Auctions* case was a coverage dispute concerning an identical policy of marine insurance on a pleasure vessel that sank. *Id*. Much like the present case, the insured asserted a cause of action based on Mississippi's bad faith statute and challenged the insurance policy's choice of law clause. *Id*. Even applying the *Bremen* analysis, the Fifth Circuit in *Durham Auctions* held that GLI's choice of law clause was valid and enforceable and blocked the application of Mississippi's bad faith statute. *Id*. Of course, by enacting a bad faith statute (MS ST §83-5-7), Mississippi had clearly expressed a public policy against the bad faith

denial of insurance claims. Still, the mere fact that a state has a bad faith statute does not demonstrate a public policy "strong" enough to defeat the enforcement of a choice of law clause in a policy of marine insurance. *Durham Auctions*, *supra*.

The same half-wrong and half-right result was reached in the case of *Deep Sea Financing, LLC v. British Marine Luxembourg, S.A.*, a coverage dispute concerning a policy of marine insurance on a dredging vessel that ran aground. 2010 WL 3603794 (S.D.Ga.2010). Much like the present case, the insured asserted a cause of action based on Georgia's bad faith statute and challenged the insurance policy's choice of law clause. *Id.* Even misapplying the *Bremen* analysis, the district court in *Deep Sea* held that the choice of law clause was valid and enforceable and blocked the application of Georgia's bad faith statute. *Id.* Naturally, Georgia's bad faith statute expressed a public policy against the bad faith denial of insurance claims. Nonetheless, the mere fact that a state has a bad faith statute did not demonstrate a public policy "strong" enough to defeat enforcement of a choice of law clause in a policy of marine insurance. *Id.*

Neither Mississippi's bad faith statute nor Georgia's bad faith statute were a "strong [enough] public policy" to defeat the choice of law clauses in *Durham Auctions* and *Deep Sea*. There is absolutely nothing about Pennsylvania's bad faith statute which indicates a "strong[er] public policy" than the bad faith statutes that were overcome in *Durham Auctions* and *Deep Sea*. In the competition between

federal admiralty law and state law, Pennsylvania's bad faith statute is entitled to no greater deference than Mississippi's bad faith statute or Georgia's bad faith statute. Therefore, even misapplying *Bremen*, GLI's choice of law clause must be enforced to block the application of Pennsylvania's bad faith statute.

Finally, even if one were to indulge the Appellant's faulty analysis, there is still one insurmountable barrier to the Appellant's proposed nullification of GLI's choice of law clause. Even under Pennsylvania law, choice of law clauses are presumptively valid and enforceable. If Pennsylvania enforces choice of law clauses, then the enforcement of the present choice of law clause cannot possibly be contrary to the "strong public policy" of Pennsylvania.

Under Pennsylvania law, choice of law clauses in policies of insurance are valid and enforceable, even where the chosen law provides less protection for the insured than would Pennsylvania law. *Catlin Specialty Ins. Co. v. J.J. White, Inc.*, 309 F.Supp.3d 345 (E.D.Pa.2018). For instance, the *Catlin* case arose out of a policy of pollution liability insurance. *Id*, at 349. Following a pollution liability judgment against the insured, the insurer filed a declaratory judgment action in the federal court to determine whether the policy of pollution liability insurance afforded any coverage for the pollution liability. *Id*, at 350. The policy of pollution liability insurance contained the following choice of law clause: "The policy shall be subject [to] interpretation under the law of the State of New York." *Id*, at 353. First the

federal court noted that the Pennsylvania courts have typically enforced choice of law clauses in policies of insurance. *Id*. Second, the federal court specifically held that this rule applied even where the chosen law was less favorable for the insured than Pennsylvania law. *Id*, at 354.

See also, *Smith v. Lincoln Ben. Life Co.*, 2009 WL 789900, p. 7 (W.D.Pa.2009) ("Under Pennsylvania choice of law rules, a choice of law provision in an insurance contract will be given effect."), *Smith v. Commonwealth Nat. Bank*, 557 A.2d 775 (P.A.Super.1989) ("Choice of law provisions in contracts will generally be given effect."),

None of the cases relied upon by RAIDERS state a contrary rule under Pennsylvania law. In fact, not a single one of the cases relied upon by RAIDERS even deals with choice of law clause like GLI's. Every case relied on by RAIDERS concerns a choice of law analysis ***in the absence of a choice of law clause***. The first case relied on by RAIDERS, *Kilmer v. Connecticut Indem. Co.*, concerned a policy of insurance on a building destroyed by fire. 189 F.Supp.2d 237 (M.D.Pa.2002). The policy included no general choice of law clause. *Id*. Instead, the policy included two very narrow provisions which only applied New York law to two discrete issues; (1) fraud in the process of application and (2) fraud in the appraisal of the insured risk. *Id*, at 245. However, the policy said nothing about the Pennsylvania bad faith statute. *Id*. Therefore, unlike the present matter, the district court in *Kilmer* was not

weighing the enforcement of a choice of law clause. *Id*. Rather, the district court in *Kilmer* was being asked to decide which law applied in a situation where there was no choice of law clause. *Id*. In that situation, the district court had to weigh the relative interests of Pennsylvania (the insured's state of residence) against the interest of New York (the state where the insurer was located). *Id*. In this situation, where there was no choice of law clause, the district court found that Pennsylvania had the greater interest in the application of its law. *Id*, at 245. *Kilmer* said absolutely nothing about Pennsylvania's law pertaining to the enforcement of choice of law clauses. *Id*.

Similarly, the next two cases had nothing whatsoever to do with choice of law clauses. In the *Toy* case, which did not involve a choice of law clause, the Supreme Court of Pennsylvania held that Pennsylvania's bad faith statute did not apply to allegations that an insurer engaged in deceptive or unfair practices in soliciting the purchase of an insurance policy. *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186 (Pa.2007). In the *Danganan* case, which also did not involve a choice of law clause, the Supreme Court of Pennsylvania held that Pennsylvania's bad faith statute applied to insurers based in Pennsylvania, even when they sold policies to insureds in other states. *Danganan v. Guardian Protections Services*, 179 A.3d 9 (Pa.2018).

To simplify this matter, and to illustrate the irrelevance of these cases, GLI will concede that, absent a choice of law clause, Pennsylvania's bad faith statute

would apply to the present case under federal admiralty choice of law rules. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882; 1991 A.M.C. 2211 (5th Cir.1991), *Windward Traders, Ltd. v. Fred S. James & Co. of New York, Inc.*, 855 F.2d 814 (11th Cir.1988). This has been the clear rule since the Supreme Court's *Wilburn Boat* decision in 1955. *Supra*. But, since there is an applicable choice of law clause, *Kilmer*, *Toy*, and *Danganan* are irrelevant.

The dispositive point in this case cannot be emphasized enough: the federal courts have "fashioned a large part of the existing rules that govern admiralty. And States can no more override such judicial rules validly fashioned than they can override Acts of Congress." *Wilburn Boat*, at 314. The Supremacy Clause of the Constitution absolutely requires that federal law must always displace state law, no matter how forcefully a state may express its interest. Therefore, in light of the voluminous caselaw enforcing GLI's choice of law clause, including this Court's decision in *AGF Marine*, *supra*, GLI's choice of law clause must be enforced under federal admiralty law, regardless of the alleged "strong public policy" of Pennsylvania.[6]

### C. The second part of the choice of law clause applies to bar all state law causes of action except those that exist under New York law.

---

[6] Short of seceding from the Union, the acts of the Pennsylvania General Assembly, no matter how urgent or how wise, cannot possibly displace federal admiralty law. *Wilburn Boat*, *supra*.

The final deficiency in the Appellant's argument is looking at the terms of the choice of law clause in isolation, without applying the proper rules of contract construction. It must always be borne in mind that, under federal admiralty law, the purpose of analyzing the text of any contract is to determine what the parties intended at the time the contract was formed. *Royal Ins. Co. v. Orient Overseas Container Line Ltd.*, 514 F.3d 621, 634; 2008 A.M.C. 337 (6th Cir.2008). *Suydam v. Reed Stenhouse of Washington, Inc.*, 820 F.2d 1506; 1988 A.M.C. 441 (9th Cir.1987) ("The question of whether a given sentence in a marine insurance policy is to be given the effect of a warranty depends upon the intention of the parties."), *citing*, *G. Gilmore & C. Black, The Law of Admiralty* §2–7, p. 67 (2d ed.1975).[7]

For instance, the case of *Fireman's Fund Ins. Co. v. Cox* concerned a policy of marine insurance covering a shrimp trawler. 742 F.Supp. 609; 1990 A.M.C. 908 (M.D.Fla.1989). When the captain and the mate were attacked by the crew, the marine insurer denied coverage for the insured's potential liability arising out of the resulting injuries. *Id*, at 610. The coverage dispute turned on the meaning of "crew members" in the disputed policy. *Id*. Since the term was undefined, the court looked

---

[7] Of course, the same applies under both New York law and Pennsylvania law. *Chiquita Intern. Ltd. v. Liverpool and London S.S. Protection and Indem. Ass'n Ltd.*, 124 F.Supp.2d 158; 2001 A.M.C. 839 (S.D.N.Y.2000). *See also*, *Atlantic Specialty Insurance Company v. AC Chicago, LLC*, 272 F.Supp.3d 1043, 1049; 2018 A.M.C. 1183 (E.D.Ill.2017) (applying the same interpretation rule under Illinois law to a policy of marine insurance.

to the usage of the terms in the prior federal admiralty caselaw to determine the intentions of the contracting parties. *Id.* In a decision affirmed by the Eleventh Circuit, the district court examined federal admiralty law and held that the captain, the mate, and the cook were all "crew" as that term was understood by federal admiralty law. *Id.*

Another example of this analysis is the case of *Sentry Select Ins. Co. v. Royal Ins. Co. of America*, in which the Ninth Circuit applied the same rule of interpretation under Washington law to a contract of excess liability insurance. 481 F.3d 1208, 1221; 2007 A.M.C. 913 (9th Cir.2007). First, the Ninth Circuit noted that, to determine the intent of the parties, "we look first to evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties." *Id* (*quoting Restatement (Second) of Contracts* §212 cmt. b (1981)). Applying this interpretative rule, the Ninth Circuit examined the coverage of the underlying policy and the meaning of certain "terms of art" within the industry in order to determine the intent of the parties with respect to the excess policy. *Id.*

In the present matter, the best way to determine the parties' intent is to note that, with one exception analyzed below, every single federal district and appellate court for the last fifteen years, including this Court, has held that the second part of GLI's choice of law clause applies to all disputes between the parties, including state

law statutory claims for bad faith and attorney's fees, and not just the express terms of the policy.

The very first case to apply GLI's choice of law clause was *Chiariello v. ING Groep NV*, 2006 A.M.C. 2148. This case involved an identical policy of marine insurance with an identical choice of law clause calling for the application of New York law in any case where there was no entrenched rule of federal admiralty law. *Id*. Following a loss, the marine insurer denied coverage on the basis of a single-handed navigation provision. *Id*. After the court awarded summary judgment to the insured, the insured attempted to recover its attorney's fees under California's bad faith law. *Id*. Relying on the choice of law clause, the marine insurer argued that the issue of bad faith attorney's fees had to be governed by New York law. *Id*. Applying the same choice of law clause as in the present case, the Northern District of California agreed with the marine insurer that there was no entrenched rule of federal admiralty law pertaining to a prevailing insured's assertion of a bad faith claim and demand for attorney's fees. *Id*. Therefore, turning to the second part of the choice of law clause, the Northern District of California held that New York law applied to the extracontractual issue of the insured's assertion of a state law bad faith claim and demand for attorney's fees. *Id*. The district court did not hold that the second part of the choice of law clause was limited to the express terms of the policy. *Id*.

In 2008, this Court considered the same issue in the case of *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 261-62; 2008 AMC 2300. When the insured yacht sank off the coast of Grenada, the marine insurer denied coverage based on the insured's breach of the duty of *uberrimae fidei* ("utmost good faith"). *Id*, at 262. Following a decision by the district court that the policy afforded no coverage for the sinking, the loss payee appealed, arguing that it could still recover, despite the insured's breach. *Id*, at 265. Since there is no rule of federal admiralty law pertaining to the rights of loss payees, the Third Circuit applied the second part of the choice of law clause to the loss payee's extracontractual claim. *Id*. Even though there was no express provision of the policy pertaining to the rights of loss payees, meaning that this was an extracontractual issue exactly like a statutory bad faith claim, this Court applied New York law and held that a loss payee had no greater right to recover under the policy than did the insured. *Id*.

In 2009, the Fifth Circuit Court of Appeals considered this same issue in the case of *Great Lakes v. Durham Auctions*, 585 F.3d 236; 2010 A.M.C. 185. The policy of marine insurance in dispute contained an identical choice of law clause. *Id*, at 238-39. Great Lakes denied coverage based on the insured's misrepresentation of material facts while applying for the policy of marine insurance. *Id*, at 238. On summary judgment, the district court held that there was no rule of federal admiralty law, but refused to apply New York law as required by the choice of law clause. *Id*.

Instead, the district court applied Mississippi law. *Id*, at 239. On appeal, the Fifth Circuit held that, since there was no established rule of federal admiralty law, New York law applied to the extracontractual issue of the insured's misrepresentation of material facts on the application. *Id*. The Fifth Circuit specifically applied the second part of the choice of law clause beyond the express terms of the policy to an extracontractual issue, the insured's duty to truthfully disclose all material facts before the contract of insurance was even formed. *Id*.

That same year, the Western District of Oklahoma considered the same issue in the case of *Great Lakes Reinsurance (UK), PLC v. Sea Cat I, LLC*, 653 F.Supp.2d 1193; 2010 A.M.C. 703 (W.D.Ok.2009). The policy of marine insurance in dispute contained an identical choice of law clause. *Id*, at 1196. Great Lakes denied coverage based on the insured's breach of the warranty of seaworthiness and the insured counterclaimed for bad faith breach of contract under the Oklahoma statute. *Id*, at 1198. On summary judgment, the district court applied the choice of law clause and held that New York law applied to the extracontractual issue of the insurer's alleged bad faith. *Id*. Like the cases above and below, the district court did not hold that the second part of the choice of law clause was limited to the express terms of the policy. *Id*. Instead, the district court held that the second part of the choice of law clause applied to the extracontractual issue of bad faith claims arising under state law. *Id*.

In 2010, the Southern District of California considered the same issue in the case of *Great Lakes Reinsurance (UK) PLC v. Dion*, 2010 A.M.C. 338 (S.D.Cal.2010). The policy of marine insurance in dispute contained an identical choice of law clause. *Id.* Following the marine insurer's filing of a declaratory judgment action, the insured filed a counterclaim for breach of contract and for attorney's fees for breach of the covenant of good faith and fair dealing under California law. *Id.* Applying the second part of the choice of law clause, the Southern District of California held that New York law applied to the extracontractual issue of the insured's demand for attorney's fees under state law. *Id.* The district court did not hold that the second part of the choice of law clause was limited to the express terms of the policy. *Id.*

Just last year, the exact same argument that is being advanced by the Appellant was considered and rejected by Judge Hillman in the District of Massachusetts. *Great Lakes Insurance SE v. Martin Andersson*, --- F.Supp.3d ----; 2021 WL 2542489.[8] The *Andersson* case arose out of an identical policy of marine insurance,

---

[8] Furthermore, it should be noted that the district court's decision in *Andersson* specifically relied on, and commended the reasoning of, Judge Robreno's decision in the present case, writing, "I find the reasoning by a recent decision in the Eastern District of Pennsylvania more persuasive." *Id*, at 5, *quoting*, *Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*, 521 F.Supp.3d 580 (E.D.Pa.2021). The district court's decision in *Andersson* is presently on appeal before the United States Court of Appeals for the First Circuit. *Great Lakes Insurance SE v. Andersson*, 21-1648.

issued by the same marine insurer, containing an identical choice of law clause. *Id*.

Following the marine insurer's filing of a declaratory judgment action, the insured counterclaimed for bad faith breach of contract under the Massachusetts bad faith statute, M.G.L.A c. 176D §3. *Id*. Just as GLI did in the present matter, the marine insurer moved to dismiss the insured's state law bad faith claim based on the choice of law clause. *Id*, at 2. Applying the second part of the choice of law clause, the District of Massachusetts held that New York law applied to the extracontractual issue of the insured's demand for attorney's fees under state's bad faith statute. *Id*. The district court did not hold that the second part of the choice of law clause was limited to the express terms of the policy. *Id*.

Against this weight of caselaw, the Appellant has found a single case, ignoring every decision for the last fifteen years, which applied an unreasonably cramped reading of the clause, and held that the second part of GLI's choice of law clause did not bar the application of state law statutory claims for attorney's fees. *Great Lakes Insurance SE v. Boat Rental Miami, Inc.*, 2020 WL 264674 (S.D.Fla.2020).

The *Boat Rental Miami* case arose out of an identical policy of marine insurance, issued by the same marine insurer as in the present matter, containing an identical choice of law clause, affording the same coverage for a vessel. *Id*, at 2. Following an incident in which a passenger was hurt aboard the vessel, the insurer investigated the claim and denied coverage for the insured's liability. *Id*. During

the ensuing coverage dispute, the insurer filed a declaratory judgment action, and the insured asserted a claim for extracontractual damages for breach of fiduciary duty under Florida law. *Id*. The insurer moved to dismiss the Florida counterclaims based on the policy's identical choice of law clause. *Id*.

Judge Altonaga of the Southern District of Florida examined the first part of the clause (which states that "any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United State Federal Admiralty law") and held that the first part of the clause applied federal admiralty law to any dispute arising between the parties. *Id*, at 5. Separately examining the second part of the clause (which states that, absent a rule of federal admiralty law, "this insuring agreement is subject to the substantive laws of the State of New York), Judge Altonaga held that New York law only applied to the express terms of the policy. *Id*. Beyond those express terms, Judge Altonaga held that New York law did not apply to extracontractual issues, such as state bad faith law. *Id*.

The *Boat Rental Miami* decision misconstrued the scope of GLI's choice of law clause because Judge Altonaga's decision imposed an unreasonably narrow reading of the integrated phrase, "this insuring agreement is subject to[,]" which is out of step with the majority of courts that have construed the clause. Rather than give the phrase its plain and ordinary meaning, and rather than apply the interpretation that the parties had obviously come to rely on, Judge Altonaga isolated

and rewrote the second phrase to mean this: "the express terms of this insuring agreement shall be interpreted under" New York law. By imposing this cramped and unnatural reading, Judge Altonaga unreasonably narrowed the scope of the clause and refused to apply the clause to dismiss state law claims not arising under New York law.

The properly broad scope of the phrase "subject to" can be seen in multiple federal admiralty decisions. This exact issue was addressed by the Fourth Circuit in the case of *Bominflot, Inc. v. The M/V HENRICH S*, 465 F.3d 144; 2006 A.M.C. 2510 (4th Cir.2006). *Bominflot* concerned a contract to deliver fuel oil to a vessel. *Id*, at 145. The contract contained this choice of law clause: "This agreement is **subject to** the law and jurisdiction of the courts of England[.]" *Id*, at 146 [emphasis added]. Exactly like the second part of GLI's choice of law clause, this choice of law clause did not use the phrase "any disputes." *Id*. Exactly like the second part of GLI's choice of law clause, this choice of law clause stated that the "agreement" was "subject to" English law. *Id*. Exactly like the insured in *Boat Rental Miami* and exactly like RAIDERS in the present matter, the purchaser of the fuel oil argued that English law only applied to the interpretation of the express terms of the contract, but that United States law should apply to allow a maritime lien on the vessel, an extracontractual remedy. *Id*. However, the Fourth Circuit held that this argument was "unconvincing." *Id*, at 148 (fn. 7). In order to determine the meaning of the

phrase, "subject to", the Fourth Circuit turned to the dictionary. *Id*. According to *Merriam-Webster's Collegiate Dictionary*, the phrase "subject to" means that the contract is "placed under the authority or control" of English law. *Id*. Moreover, "subject to" is synonymous with "governed by." *Id*. Therefore, notwithstanding the fact that a maritime lien is an extracontractual remedy, the Fourth Circuit held that the application of a maritime lien would make the contract "subject to" American law and that this was expressly forbidden by the contract's choice of law clause. *Id*. Therefore, the choice of law clause was enforced to block the maritime lien under American law. *Id*.

To give a very interesting recent example, Judge Altonaga addressed this exact issue in the case of *Arndt v. Twenty-One Eighty-Five, LLC*, 448 F.Supp.3d 1310 (S.D.Fla.2020). This case arose out of a finance agreement with a choice of law clause: "This Note is ***governed by*** federal law and, to the extent not preempted thereby, by the law of the State of Illinois." *Id*, at 1315-16 [emphasis added].[9] Exactly like the second part of GLI's choice of law clause, this choice of law clause

---

[9] "Governed by" is synonymous with "subject to." *Bominflot*, at 148 (fn. 7). *See also*, *Texaco Inc. v. Duhe*, 274 F.3d 911, 919 (5th Cir.2001) ("Moreover, the Ackals' gas in fact was 'subject to' the LP&L contracts in existence as of November 9, 1978, when the NGPA became effective. As soon as Texaco delivered Bateman Lake Field gas to LP&L in fulfillment of its delivery obligations, the gas at that moment was 'governed by' the terms of the contract in question. *See Black's Law Dictionary* 1425 (6th ed.1990) ('subject to' means 'governed or affected by'); *see also Webster's Third International Dictionary* (1998 ed.) ('One that is placed under the authority ... of someone or something.'").

did not use the phrase "any disputes." *Id*. Exactly like the second part of GLI's choice of law clause, this choice of law clause stated that the "Note" was "governed by" federal law. *Id*. Exactly like the insured in *Boat Rental Miami*, the plaintiff argued that federal law and Illinois law only applied to the interpretation of the express terms of the contract, but that Florida law should apply to extracontractual claims arising under Florida statute and extracontractual claims for equitable relief. *Id*, at 1317-18. In particular, the plaintiff argued that, if the drafter of the contract had wanted the choice of law clause to reach all extracontractual claims, then the drafter should have used the phrase, "any dispute or claim between the parties." *Id*, at 1318. However, Judge Altonaga correctly held that, "as a matter of common sense [statutory claims and related contract claims] fall squarely within the parameters of the choice of law provision" in the contract. *Id*, at 1318-19. In fact, Judge Altonaga expressly rejected the claim that a choice of law clause should be read in an artificially narrow way unless the clause "employs talismanic language" about "claims arising out of the agreement." *Id*, at 1319.

To give another example, the case of *American S.S. Owners' Mut. Protection and Indem. Ass'n, Inc. v. Dann Ocean Towing, Inc.* arose out of a policy of marine insurance affording third-party liability coverage for a tugboat that ran aground in Biscayne Bay in South Florida. 2012 WL 1565141 (D.Md.2012). Just like the present policy, the *Dann Ocean* policy included a choice of law clause electing New

York law: "These Rules and any contract of insurance between the Association and a member shall be ___*governed by*___ and construed in accordance with the law of the State of New York." *Id* [emphasis added]. Under New York law, breach of contract actions are subject to a six-year statute of limitations. *Id*. *Contra* Judge Altonaga's decision in *Boat Rental Miami*, it was not necessary for the clause to use overly broad language referring to "any dispute arising under" the contract. *Id*. Rather, since the contract was "governed by" New York law, New York law applied to the extracontractual issue of statute of limitations.[10] Therefore, notwithstanding the fact that the policy of marine insurance was delivered to an insured in Florida, New York's statute of limitations had to be applied. *Id*.

If this Court elects to allow the application of the Pennsylvania bad faith statute, then the Policy will have been made "subject to" Pennsylvania law. This is expressly forbidden by the Policy's choice of law clause. The only state law alternative permitted by the choice of law clause is that the Policy must be "subject to" New York law.

Beyond the express terms of the choice of law clause, the intent of the parties can be seen in the numerous cases going back to 2006 (*Chiariello*, *supra*), already analyzed above, in which GLI has enforced this choice of law clause to dismiss state

---

[10] Again, since "governed by" and "subject to" are synonymous, then GLI's choice of law clause must be given the same reasonable interpretation as the choice of law clauses in *Dann Ocean*, *Arndt*, and *Bominflot*.

law extracontractual claims, especially state law bad faith claims. Since GLI's choice of law clause has been rigorously enforced to dismiss state law bad faith claims for fifteen years, the only reasonable conclusion is that the parties intended the clause to reach state law bad faith claims.

When analyzing GLI's choice of law clause, it cannot be reasonable to ignore this mountain of caselaw. This exact point was directly addressed in a decision reached by the Southern District of Texas in the case of *Great Lakes Insurance SE v. Tico Time*, 2011 WL 1044154. *Tico Time* began exactly like the present matter, as a declaratory judgment action brought by Great Lakes seeking a ruling that the policy of marine insurance afforded no coverage for a sinking. *Id*. The insured filed a counterclaim based on the Texas bad faith statute. *Id*. Great Lakes moved to dismiss the Texas bad faith claim based on the exact same choice of law clause as in the present case. *Id*. In its initial order, the district court issued a ruling very similar to Judge Altonaga's ruling in the *Boat Rental Miami* case and held that, if Great Lakes had meant to preclude Texas bad faith claim, then the second part of the choice of law clause should have used language referring to "any dispute arising hereunder." *Great Lakes Insurance SE v. Tico Time*, 2010 WL 4065470 (S.D.Tex.2010). However, upon review of the motion for reconsideration filed by Great Lakes, the district court reversed itself and dismissed the insured's Texas bad faith claim. *Tico Time*, 2011 WL 1044154, p. 3. First, the district court held that

the first and second parts of the choice of law clause could not be read separately, but had to be read together and with reference to each other. *Id*. Since the first part of the clause clearly referred to "disputes arising hereunder," the Southern District of Texas held that it did not make sense to conclude that the parties intended that the second part of the clause would apply only to contract claims. *Id*. Reading both parts together, the district court held that the parties clearly intended that, in the absence of an entrenched rule of federal admiralty law, New York law should apply to the exclusion of any contrary law from the state where the policy was delivered. *Id*. Since the Texas bad faith claim would not even exists but for the contract, a cohesive reading of the choice of law clause required that it be applied to all extracontractual claims, not just interpretation of the terms of the policy. *Id*.

As Judge Altonaga made clear in *Arndt*, it is simple "common sense" that the parties to the present policy intended the second part of the choice of law clause to reach all issues, including state law bad faith claims. 448 F.Supp.3d at 1318-19.

This is exactly the argument endorsed by Judge Tillman in the recent *Andersson* case. --- F.Supp.3d ---; 2021 WL 2542489 at p. 3.

Judge Tillman wrote:

As both parties have noted, the choice of law clause at issue here has already been construed by other courts. Multiple courts have agreed that the two clauses should not be read in isolation, and so New York law applies to extra contractual claims that "arise hereunder", not just claims that are part of "this insuring agreement." *See*, *e.g. Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*, 2011 WL 1044154

at *3-4 (S.D. Tex. Mar. 16, 2011) ("It does not make sense to interpret the phrase that calls for the application of New York law when there is no entrenched maritime precedent as applying only to the agreement and not to the disputes arising under the agreement, because such an interpretation would leave no alternative for this class of claims, even though the provision clearly intends (by using the phrase "but where no such well established, entrenched precedent exists.") to establish an alternative choice of law if there is no entrenched maritime law."); *Openwater Safety IV, LLC v. Great Lakes Insurance SE*, 435 F.Supp.3d 1142 (D. Colo. 2020) (finding that New York law applied to all parties' claims and counterclaims which "ar[o]se from the Parties' performance under the insurance contract *and subsequent coverage dispute*) (emphasis added); *Chiariello v. Ing Groep NV*, 2006 A.M.C. 2148 (N.D. Cal. 2006) (finding that New York law applied to motion for attorney's fees for insurer's bad faith denial of claim because there was no established maritime law on point); *contra Great Lakes Insurance SE v. Boat Rental Miami, Inc.*, 2020 WL 264674 at *5 (S.D. Fl. Jan. 17, 2020).

To follow Judge Altonaga's decision in *Boat Rental Miami* is to hold that GLI's choice of law clause is always "up for grabs" every single time an unhappy litigant chooses to ignore the caselaw and challenge the meaning of the clause. At this moment, so many district and appellate courts have ruled on the meaning of this clause that it ceases to be reasonable to argue that some other meaning was intended when the contract was made. At this point, GLI, and every other marine insurer who employs this choice of law clause[11], must be allowed to rely on the decisions of the

---

[11] Besides GLI, this choice of law clause has been relied upon by at least four other marine insurers; (1) AGF Marine & Aviation Transport, (2) XL Specialty Insurance Company, (3) Lloyd's of London Syndicate 457, and (4) ING Groep NV. *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255; 2008 A.M.C. 2300, *XL Specialty Insurance Company v. Prestige Fragrances, Inc.*, 420 F.Supp.3d 172;

federal courts holding that this choice of law clause applies to all disputes between the parties, especially bad faith claims which arise under state law. For many years now, marine underwriters throughout the Anglo-American marine insurance market have relied on the certainty of the enforcement of this specific choice of law clause when they have decided what risks to cover, decided what terms to set, and decided what premiums to charge.

When this policy of marine insurance was issued to the Appellant, nine courts, including this Court and the Fifth Circuit Court of Appeals, had held that this choice of law clause required that extracontractual claims could not be brought, including bad faith claims arising under the laws of states other than New York. In light of that caselaw, it cannot be remotely credible for the Appellant to argue that GLI and RAIDERS intended some other contrary meaning when the Policy was issued. Therefore, GLI's choice of law clause must be enforced to dismiss the Pennsylvania bad faith claim, fiduciary claim, and consumer claim asserted by RAIDERS.

## CONCLUSION

First, as detailed above, there is simply no way that Pennsylvania law can defeat the enforceability of a choice of law clause under federal admiralty law. The Supremacy Clause absolutely requires that the presumptive validity of such clauses

---

2019 A.M.C. 2719 (S.D.N.Y.2019), *Carib Resorts, Inc. v. Watkins Underwriters at Lloyds, Syndicate Number 457*, 2018 WL 8048755 (S.D.Fla.2018), *Chiariello v. Ing Groep NV*, 2006 A.M.C. 2148.

must always defeat contrary state law, no matter how strong or compelling that state law may be. Therefore, GLI asks that this Court adhere to its binding decision in *AGF Marine*, enforce GLI's choice of law clause, and affirm the District Court's dismissal of those causes of action which arise under Pennsylvania law.

Second, looking at the words and caselaw from the past fifteen years, there can be no basis for the contention that the parties to this policy of marine insurance intended anything but that the second part of the choice of law clause must apply to prohibit any cause of action for bad faith which arises under anything except New York law. To hold otherwise would be to hold that the parties may ignore fifteen years of caselaw interpreting this clause in that precise way.


Dated:        January 12, 2022

MICHAEL I. GOLDMAN, ESQ.          GEORGE R. ZACHARKOW, ESQ.
Goldman & Hellman                 Deasey, Mahoney & Valentini, Ltd.
233 Harvard Street                1601 Market Street
Suite 211                         Suite 3400
Brookline, MA 02446               Philadelphia, PA 19103
Cel (617)671-8675                 Tel (215) 587-9400
Fax (617)566-4292                 Fax (215) 587-9456
Em michael@goldmanandhellman.com  Em gzacharkow@DMVLawFirm.com


By:   /s/ Michael I. Goldman          By:   /s/ George R. Zacharkow
MICHAEL I. GOLDMAN                MICHAEL I. GOLDMAN
MA Bar No. 677362                PA Bar No. 32816

**CERTIFICATE OF COMPLIANCE**

    I HEREBY CERTIFY that this brief complies with F.R.A.P. 32(a)(7)(B) in that it contains ten thousand eight hundred forty three (10,843) words.

    Dated:      January 12, 2022

| | |
|---|---|
| MICHAEL I. GOLDMAN, ESQ. | GEORGE R. ZACHARKOW, ESQ. |
| Goldman & Hellman | Deasey, Mahoney & Valentini, Ltd. |
| 233 Harvard Street | 1601 Market Street |
| Suite 211 | Suite 3400 |
| Brookline, MA 02446 | Philadelphia, PA 19103 |
| Cel (617)671-8675 | Tel (215) 587-9400 |
| Fax (617)566-4292 | Fax (215) 587-9456 |
| Em michael@goldmanandhellman.com | Em gzacharkow@DMVLawFirm.com |

| | |
|---|---|
| By:   /s/ Michael I. Goldman | By:   /s/ George R. Zacharkow |
| MICHAEL I. GOLDMAN | GEORGE R. ZACHARKOW |
| MA Bar No. 677362 | PA Bar No. 32816 |

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on January 12, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

| | |
|---|---|
| MICHAEL I. GOLDMAN, ESQ. | GEORGE R. ZACHARKOW, ESQ. |
| Goldman & Hellman | Deasey, Mahoney & Valentini, Ltd. |
| 233 Harvard Street | 1601 Market Street |
| Suite 211 | Suite 3400 |
| Brookline, MA 02446 | Philadelphia, PA 19103 |
| Cel (617)671-8675 | Tel (215) 587-9400 |
| Fax (617)566-4292 | Fax (215) 587-9456 |
| Em michael@goldmanandhellman.com | Em Zacharkow@DMVLawFirm.com |

| | |
|---|---|
| By:   /s/ Michael I. Goldman | By:   /s/ George R. Zacharkow |
| MICHAEL I. GOLDMAN | GEORGE R. ZACHARKOW |
| MA Bar No. 677362 | PA Bar No. 32816 |

**<u>Great Lakes Insurance SE v. Raiders Retreat Realty, LLC</u>**
**<u>DOCKET NO. 21-1562</u>**
**<u>CERTIFICATE OF ADMISSION</u>**

I HEREBY CERTIFATE that the undersigned counsel for Appellee GREAT LAKES INSURANCE SE are admitted to practice before the United States Court of Appeals for the Third Circuit.

MICHAEL I. GOLDMAN, ESQ.  
Goldman & Hellman  
233 Harvard Street  
Suite 211  
Brookline, MA 02446  
Cel (617)671-8675  
Fax (617)566-4292  
Em michael@goldmanandhellman.com

GEORGE R. ZACHARKOW, ESQ.  
Deasey, Mahoney & Valentini, Ltd.  
1601 Market Street  
Suite 3400  
Philadelphia, PA 19103  
Tel (215) 587-9400  
Fax (215) 587-9456  
Em Zacharkow@DMVLawFirm.com


By:   /s/ Michael I. Goldman  
MICHAEL I. GOLDMAN  
MA Bar No. 677362

By:   /s/ George R. Zacharkow  
GEORGE R. ZACHARKOW  
PA Bar No. 32816